DAVID M. CROSBY, ESQ., Bar #3499
**CROSBY & ASSOCIATES**
711 South Eighth Street
Las Vegas, NV 89101
(702) 382-2600
Attorney for Debtor(s)

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In the Matter of: | Case No.: BK-S-09-10652-BAM |
| | Chapter 13 |
| MICHAEL WILSON and HEATHER HOLLOWAY, | Trustee: Kathleen A. Leavitt |
| | Date: October 22, 2009 |
| | Time: 2:30 p.m. |
| Debtor(s). | |

**TO CREDITOR:**    Litton Loan Servicing
Bankruptcy Department
4828 Loop Central Drive
Houston, TX 77081

**REGARDING CLAIM**: Secured Claim No. 1 in the amount of $382,904.88.

### DEBTORS' OBJECTION TO CREDITOR'S PROOF OF CLAIM NO. 1

The above-named Debtors, by and through their attorney, David M. Crosby, Esq., hereby object to the proof of claim filed by the creditor herein above identified as follows:

Claim No. 1 was filed by Litton Loan Servicing ("Creditor") on February 4, 2009, in the total sum of $382,904.88, allegedly secured by the real property commonly known as 3321 Perching Bird Lane, North Las Vegas, NV 89084 ("Las Vegas Property"). A true and correct copy of Proof of Claim No. 1 is attached hereto as **Exhibit A**.

Creditor's claim includes the sum of $8,636.61 for a "Pre-Petition Escrow Advance" for the payment of back property taxes (see Exhibit A, p. 2). However, the Clark County Treasurer's Office has also filed its own claim for back taxes, in the total sum of $2,092.75, for taxes due on January 5, 2009 (installment 3), and March 2, 2009 (installment 4). A true and correct copy of Claim No. 2 by the Clark County Treasurer is attached hereto as **Exhibit B**.

1    The fact that the Clark County Treasurer has filed its own claim for back taxes, and

2   that its claim reflects that installments 1 and 2 have been paid in full (see Exhibit B, p. 3),

3   suggest that Creditor's claim for "Pre-Petition Escrow Advances" is erroneous and was

4   never paid.   Furthermore, Creditor's own Claim does not specify what tax period was

5   allegedly paid, so there is no way to confirm the validity of the Claim.

6    Accordingly, the Debtors object to Claim No. 1 on the grounds that Creditor is not

7   entitled to the payment of at least $8,636.61, and respectfully requests that the secured

8   portion of the Claim be reduced to $21,299.54, and that the total Claim be reduced to

9   $374,268.27.

10    DATED this 16th day of September, 2009.

11                                        Respectfully Submitted,

12

13

14                                        /s/ David M. Crosby
                                          Attorney for Debtors

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

| United States Bankruptcy Court District of Nevada | Proof of Claim |
|---|---|

In re (Name of Debtor):
**Michael J. Wilson and Heather A. Wilson**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. ' 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR OWNIT MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-6, ITS SUCCESSORS AND/OR ASSIGNS.

Name and Address Where Notices Should be Sent:
**Litton Loan Servicing**
**Bankruptcy Department**
**4828 Loop Central Drive**
**Houston, TX 77081**

Name and Address Where Payment Should be Sent (if different from above):
**Litton Loan Servicing**
**Bankruptcy Department**
**P.O. Box 4387**
**Houston, TX 77210-4387**

Case Number:
**09-10652-BAM**

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**5. Amount of claim Entitled to Priority under 11 U.S.C '507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**
Specify the priority of the claim.

Amount of Claim at Time Case Filed: $ **$382,904.88***
If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.
* This is an estimated figure and is not to be relied upon as a payoff statement.

2. Basis for Claim: __Money loaned (Real Estate Mortgage)_____

3. Last four digits of any number by which creditor identifies debtor: XXXX0771
   3a. Debtor may have scheduled account as: _____

4. **Secured Claim**
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
   Describe: _____

   Value of Property _____  Annual Interest Rate __7__%

   Amount of arrearage and other charges as of time case filed included in secured claim,

   if any $ 29,936.15 Basis for perfection: _____

   Amount of Secured Claim: $382,904.88*  Amount Unsecured: $_____

6. **CREDITS:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **DOCUMENTS:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

☐ Domestic support obligations under 11 U.S.C. ' 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. ' 507(a)(4).

☐ Contributions to an employee benefit plan—11 U.S.C. ' 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use—11 U.S.C. ' 507(a)(7).

☐ Taxes or penalties owed to governmental units---11 U.S.C. ' 507(a)(8).

☐ Other--Specify applicable paragraph of -11 U.S.C. ' 507(a)_____.

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

Date: 2/4/2009

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

/s/Alice A. Blanco/Karrollanne K. Cayce/John D. Schlotter/Michael J. McCormick/A. Michelle Hart/Matthew Dyer/Richard H. Siegel/Whitney Groff/Maria Tsagaris  Agent for Litton Loan Servicing Its Successors and/or assigns , 1544 Old Alabama Road, Roswell, Georgia 30076, Telephone: 770-643-7200

FOR COURT USE ONLY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA
LAS VEGAS DIVISION

IN RE:                                    )
                                          )    CASE NO. 09-10652-BAM
Michael J. Wilson                         )    CHAPTER 13
Heather A. Wilson                         )    JUDGE Bruce A. Markell
                                          )

## EXHIBIT A

### ITEMIZATION OF CLAIM

Total Arrearage as of 1/19/2009
- Regular Monthly Installments of $ 2,398.48(Principal & Interest) July 2008 through January 2009 — $ 16,789.36
- Late Charges — 959.36
- Pre Petition Escrow Advance — 8,636.61
- Pre Petition Foreclosure Fees — 617.72
- Pre Petition Foreclosure Costs — 2,808.10
- Inspection Fees — 30.00
- Appraisals/BPO — 95.00

TOTAL ARREARAGES        $ 29,936.15

The current monthly payment amount is $ 2,681.81.
The Interest Rate is: 7%

Please forward all payments to Litton Loan Servicing, Bankruptcy Department, P.O. Box 4387, Houston, TX 77210-4387

Please forward all correspondence and court pleadings to McCALLA RAYMER, LLC, National Bankruptcy Department, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, 770-643-7200. File No. FISLT-09-03407, Property Address: 3321 Perching Bird Lane, North Las Vegas, NV  89084.

If legal fees and costs are incurred after this proof of claim is filed, your account will be assessed those fees and costs if legally permissible in the opinion of the lender. If such fees and costs are not paid as part of this case, they may be collected in the future pursuant to the terms of your security instrument, the Bankruptcy Code, and other applicable law.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA
LAS VEGAS DIVISION

IN RE:                                )
                                      )    CASE NO. 09-10652-BAM
Michael J. Wilson                     )    CHAPTER 13
Heather A. Wilson                     )    JUDGE Bruce A. Markell
                                      )

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Proof of Claim, has been served by

First Class Mail, postage pre-paid, upon the following parties in interest on the _____ day of

February, 2009

Debtor's Attorney:

David M. Crosby
711 S 8th St
Las Vegas, NV 89101

Chapter 13 Trustee:

Rick A. Yarnall
701 Bridger Ave., #820
Las Vegas, NV 89101

/s/ _____
Alice A. Blanco, Georgia Bar No. 062160
Karrollanne K. Cayce, Georgia Bar No. 428978
John D. Schlotter, Georgia Bar No. 629456
Michael J. McCormick, Georgia Bar No. 485749
A. Michelle Hart, Georgia Bar No. 334291
Matthew Dyer, Georgia Bar No. 236848
Richard H. Siegel, Georgia Bar No. 645825
Whitney Groff, Georgia Bar No. 738079
Maria Tsagaris, Georgia Bar No. 143071

File No. FISLT-09-03407

THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

APN No.: 124.20.213.069

**After Recording Return To:**
RUTH RUHL, P.C.
[Company Name]
Attn: Recording Department
[Name of Natural Person]
2305 Ridge Road, Suite 106
[Street Address]
Rockwall, Texas 75087
[City, State, Zip]

**Prepared By:**
RUTH RUHL, P.C.
2305 Ridge Road, Suite 106
Rockwall, TX 75087

_____[Space Above This Line For Recording Data]_____

Loan No.: ▓▓▓0771
MERS No.: 10022464000192865

MERS Phone: 1-888-679-6377

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), effective this 1st     day of    March, 2008           ,
between  Michael Wilson and Heather Hollaway Wilson, husband and wife as joint tenants

("Borrower")
and LaSalle Bank National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset Backed
Certificates, Series 2006-6 by: Litton Loan Servicing LP as its attorney-in-fact

("Lender"),
and Mortgage Electronic Registration Systems, Inc.                              ("Mortgagee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and Timely
Payment Rewards Rider, if any, dated    July 27th, 2006            , granted or assigned to Mortgage Electronic
Registration Systems, Inc. as mortgagee of record (solely as nominee for Lender and Lender's successors and
assigns), P.O. Box 2026, Flint, Michigan 48501-2026 and recorded on August 3rd, 2006      , in Book/Liber
N/A            , Page N/A            , Instrument No.   20060803-0002394          , Official Records of
Clark                County, Nevada          , and (2) the Note, bearing the same date as, and secured by,
the Security Instrument, which covers the real and personal property described in said Security Instrument and
defined therein as the "Property," located at 3321 Perching Bird Lane, North Las Vegas, Nevada 89084

Loan No.: ⬤⬤0771

the real property described being set forth as follows:

LOT 54 IN BLOCK 2 OF ASTORIA AT ALIANTE - PARCEL 20, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 116 OF PLATS, PAGE 23, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

    1.    As of March 1st, 2008    , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 354,932.09    , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

    2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of   7.000  %, from March 1st, 2008    . Borrower promises to make monthly payments of principal and interest of U.S. $ 2,398.48    , beginning on the 1st    day of  April    , 2008    , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 7.000   % will remain in effect until principal and interest are paid in full. If on September 1st, 2036    , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

    3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

    4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in Paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

---

**NEVADA LOAN MODIFICATION AGREEMENT**               Page 2 of 5
(FNMA Modified Form 3179 1/01 (rev. 6/06))

Loan No.: ⬤⬤0771

    5.      If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation agreement of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

    6.      Borrower understands and agrees that:

    (a)      All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)      All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)      Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

    (d)      Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (e)      All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (f)      Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    7.      This Agreement will not be binding or effective unless and until it has been signed by both Borrower and Lender.

| 3-13-08 | | (Seal) |
|---|---|---|
| Date | Michael Wilson | —Borrower |
| 3-13-08 | | (Seal) |
| Date | Heather Hollaway Wilson | —Borrower |
| | | (Seal) |
| Date | | —Borrower |
| | | (Seal) |
| Date | | —Borrower |

**NEVADA LOAN MODIFICATION AGREEMENT**
(FNMA Modified Form 3179 1/01 (rev. 6/06))

Loan No.: ●●0771

## BORROWER ACKNOWLEDGMENT

State of    Nevada      §

              §

County of   Clark       §

    The foregoing instrument was acknowledged before me   GAYLE M. RAVELING,   *[date]*, 03/13/0(
by   Michael Wilson and Heather Hollaway Wilson -

*[name of person acknowledged].*

(Seal) 

Printed/Typed Name: GAYLE M. RAVELING

Notary Public, State of NEVADA

My Commission Expires: APRIL 11, 2009

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
GAYLE M. RAVELING
No: 05-96822-1
My Appointment Expires Apr. 11, 2009

---

**ACKNOWLEDGMENT (NEVADA)**                **Page 4 of 5**

Loan No.: CXS0771

JAN 1 6 2009
_____
                          -Date

JAN 1 6 2009
_____
                          -Date

LaSalle Bank National Association, as Trustee
for Ownit Mortgage Loan Trust, Mortgage    -Lender
Loan Asset Backed Certificates, Series 2006-6
by: Litton Loan Servicing LP as its attorney-
in-fact

By: _____

Printed/Typed Name: ___JOE CORONA___

Its: _____VICE PRESIDENT_____

Mortgage Electronic Registration Systems, Inc.
_____
                          -Mortgagee

By: _____

Printed/Typed Name: ___Denise Bailey___
                       Assistant Secretary

Its: Assistant Secretary

## LENDER/MORTGAGEE ACKNOWLEDGMENT

State of    Texas              §
                              §
County of   Harris             §

The foregoing instrument was acknowledged before me this _____ JAN 1 6, 2009 *[date]*,
by      JOE CORONA                    ,    VICE PRESIDENT          , *[name
of officer or agent, title of officer or agent]* of  LaSalle Bank National Association, as Trustee for Ownit Mortgage
Loan Trust, Mortgage Loan Asset Backed Certificates, Series 2006-6 by: Litton Loan Servicing LP as its attorney-
in-fact

_____ , on behalf of said entity, and
by_____DENISE BAILEY_____ , Assistant Secretary of Mortgage Electronic Registration
Systems, Inc., Mortgagee.

(Seal)

*Arliss Hauser*

Printed/Typed Name: ____ARLISS HAUSER____

ARLISS D. HAUSER
Notary Public
STATE OF TEXAS
My Comm. Exp. 06/21/2011

Notary Public, State of_____Texas_____

My Commission Expires: ____JUN 2 1 2011____

ACKNOWLEDGMENT (NEVADA)                                      Page 5 of 5

Loan No.: G___0771

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | |
|---|---|
| _____ | _____  3-13-08 |
| Michael Wilson             -Borrower | Heather Hollaway Wilson        -Borrower |
| | |
| _____ | _____ |
| -Borrower | -Borrower |

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                                  Page 1 of 1

Loan No. XXXX0771

# ERROR AND OMISSIONS / COMPLIANCE AGREEMENT

The undersigned Borrower(s) for and in consideration of the Loan Modification Agreement offered by Lender, its successors and/or assigns in the amount of $ 354,932.09           , modifying the original Promissory Note secured by a Security Instrument dated July 27th, 2006           agrees to fully cooperate with any reasonable requests made by Lender, or its agent, to correct typographical errors in the Loan Modification Agreement enabling Lender to sell, convey, guarantee or obtain insurance for any investor or institution, including but not limited to, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Secretary of Veterans Affairs, or any municipal bonding authority, to ensure enforceability of the Loan Modification Agreement.  Requests may include, but are not limited to, all changes, corrections, re-execution or modification of any document related to such loan, as may be required.

The undersigned will comply with all requests within thirty (30) days from the date they are made by Lender or its agent.  If the Borrower(s) fail to meet his/her/their obligations, Borrower(s) acknowledge liability for all costs including, but not limited to, actual expenses, legal fees, court costs, and marketing expenses incurred by Lender to enforce its rights under the Loan Modification Agreement.

Dated effective this _13_ day of _March_ , _2008_

_____ (Seal)          _____ (Seal)
Michael Wilson                  -Borrower          Heather Hollaway Wilson          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

State of Nevada                                §
                                              §
County/Parish of  Clark                        §

The foregoing instrument was acknowledged before me on _MARCH 13,   2008_ [date], 3/13/08
by  Michael Wilson and Heather Hollaway Wilson

*[name of person acknowledged].*

(Seal)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
GAYLE M. RAVELING
No: 05-96822-1
My Appointment Expires Apr. 11, 2009

_____
Notary Public, State of _NEVADA_
My Commission Expires: _APRIL 11, 2009_

Loan No.: ████0771

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:

BORROWER:

| | |
|---|---|
| N/A Modification _____ | _____ 3-13-08 |
| (Date) | Michael Wilson                    (Date) |
| N/A Modification _____ | _____ 3-13-08 |
| (Date) | Heather Hollaway Wilson       (Date) |
| _____ | _____ |
| (Date) | (Date) |
| _____ | _____ |
| (Date) | (Date) |

Assessor's Parcel Number: 124 . 20 . 213 . 069

~~Recording Requested By:~~
OWNIT MORTGAGE SOLUTIONS, INC.

And When Recorded Return To:
OWNIT MORTGAGE SOLUTIONS, INC.
27349 AGOURA ROAD, SUITE 100
AGOURA HILLS, CALIFORNIA 91301
Loan Number:

Mail Tax Statements To:
MICHAEL WILSON, 2413 OLIVEWOOD, LAS VEGAS, NEVADA 89108

20060803-0002394

Fee: $35.00
N/C Fee: $0.00

08/03/2006                09:49:40
T20060135403

Requestor:
    FIRST AMERICAN TITLE COMPANY OF NEVAD(

Frances Deane              RMS
Clark County Recorder      Pgs: 22

17

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

**MIN:** 100224640000192865

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JULY 27, 2006        , together with all Riders to this document.
(B) "Borrower" is  MICHAEL WILSON AND HEATHER HOLLAWAY WILSON, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  OWNIT MORTGAGE SOLUTIONS, INC.

Lender is a  CALIFORNIA CORPORATION                                organized
and existing under the laws of   CALIFORNIA
Lender's address is   27349 AGOURA ROAD, SUITE 100, AGOURA HILLS, CALIFORNIA 91301

(D) "Trustee" is   FIRST AMERICAN
180 CASSIA WAY #502, HENDERSON, NEVADA 89014

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    *DocMagic eForms* 800-649-1362
Form 3029 1/01                      Page 1 of 15                          *www.docmagic.com*



(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated    JULY/27, 2006
The Note states that Borrower owes Lender  THREE HUNDRED EIGHTY-SIX THOUSAND
FIFTY AND 00/100            Dollars (U.S. $ 386,050.00    ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
SEPTEMBER 1, 2036    .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☒ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☐ | Condominium Rider | ☒ | Other(s) [specify] |
| | | | ADJUSTABLE RATE BALLOON RIDER |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional



or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                         of                    CLARK                      :
[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which currently has the address of          3321 PERCHING BIRD LANE
                                                        [Street]

NORTH LAS VEGAS          , Nevada     89084      ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges



and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in

---

NEVADA--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 4 of 15                      DocMagic *eForms* 800-649-1362
                                                                                        www.docmagic.com



writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

DocMagic *eFormms* 800-649-1362
www.docmagic.com



5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts



unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.




If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **10. Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

   Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

   Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

   As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

   (a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

   (b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

   **11. Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

DocMagic *eFerms* 800-649-1362
www.docmagic.com



If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this

Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained

 

in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of

servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and

DocMagic *€Forms* 800-649-1362
www.docmagic.com



the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ N/A




BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MICHAEL WILSON            -Borrower

_____ (Seal)
HEATHER HOLLAWAY          -Borrower
WILSON

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                          Witness:

_____        _____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                    Page 14 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com



State of Nevada
County of    CLARK

This instrument was acknowledged before me on 7/31/06
by   MICHAEL WILSON, HEATHER HOLLAWAY WILSON



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
R. GOLDSTEIN
Appt. No. 96-5906-1
My Appt. Expires Dec. 17, 2008

_____
                                    Notary Public

(Seal)

My commission expires: 12-17-08

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                              Page 15 of 15

DocMagic *eFrms* 800-649-1362
www.docmagic.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    District of Nevada | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>WILSON MICHAEL & HEATHER H | Case Number:<br>09-10652 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Clark County Treasurer

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:

Reference #: 124-20-213-069
Clark County Treasurer, 500 S. Grand Central Pky, PO Box 551220  Las Vegas, NV 89155-1220

**Court Claim Number:_____**
(If known)

Telephone number:
(702) 455-4338

Filed on:_____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**                    $2,092.75

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**          Real Property Taxes
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**          124-20-213-069

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property:$_____ Annual Interest Rate  10%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____ Basis for perfection: _____

Amount of Secured Claim:   $2,092.75  Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction #7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br>2/13/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>\S\ LINDA HOWARD | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



## Clark County Treasurer's Office

Laura B. Fitzpatrick, Treasurer
500 S Grand Central Pky
PO Box 551220
Las Vegas NV  89155-1220
(702) 455-4323
www.accessclarkcounty.com/treasurer

### Real Property and Special Tax Statement for Fiscal Year 2008-2009

WILSON MICHAEL & HEATHER H
3321 PERCHING BIRD LN
NO LAS VEGAS NV  89084-2359

| | | | |
|---|---|---|---|
| **Parcel Number:** | 124-20-213-069 | | |
| **Tax District:** | 250 | **Tax Rate:** | 3.3552 |
| **Location:** | 3321 PERCHING BIRD LN | | |

**Assessor Description:** ASTORIA AT ALIANTE-PARCEL 20 PLAT BOOK 116 PAGE 23 LOT 54 BLOCK 2 GEOID: PT S2 NW4 SEC 20 19 61

#### Assessed Valuation for 2008-2009

| | |
|---|---|
| Land | 36,033 |
| Building & Improvement | 96,076 |
| Personal Property | 0 |
| **Assessed Value Subject to Cap** | 132,109 |
| New Land Value** | 0 |
| New Improvement Value** | 0 |
| Personal Property Value** | 0 |
| Less Exemption | 2,260 |
| **Net Assessed Value** | 129,849 |
| New Construction Supplemental** | 0 |

#### **Not Subject to Cap

#### Summary

| | |
|---|---|
| Taxes as Assessed | $4,356.69 |
| Less Cap Reduction | $253.24 |
| Net Taxes | $4,103.45 |

#### Payment Installments

| Description | Due Date | Original Amount | Amount Due |
|---|---|---|---|
| Installment 1 | (PAID) | $1,025.87 | $0.00 |
| Installment 2 | (PAID) | $1,025.86 | $0.00 |
| Installment 3 | 1/5/2009 | $1,066.89 | $1,066.89 |
| Installment 4 | 3/2/2009 | $1,025.86 | $1,025.86 |

| **Total Annual Charges** | **$4,103.45** |
|---|---|

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### PLEASE RETURN THIS PORTION WITH YOUR PAYMENT



Make checks payable to:
**Clark County Treasurer's Office**
Mail to:
**500 S Grand Central Pky**
PO Box 551220
Las Vegas NV 89155-1220

Fiscal Year 2008-2009

Parcel Number:  124-20-213-069

Location:   3321 PERCHING BIRD LN

| | |
|---|---|
| **Comment:** | PLUS ACCRUING 10% STATUTORY INTEREST ON PRE-PETITION AMOUNTS DUE |
| **Minimum Due:** | $1,066.89 |
| **To Pay In Full:** | $2,092.75 |

**Enter Payment Amount**

$

12420213069091000001066896



**Clark County Treasurer's Office**

Laura B. Fitzpatrick, Treasurer
500 S Grand Central Pky
PO Box 551220
Las Vegas NV 89155-1220
(702) 455-4323
www.accessclarkcounty.com/treasurer

## Real Property and Special Tax Statement for Fiscal Year 2008-2009--Con't.

**Parcel Number:**    124-20-213-069

### Distribution of Fiscal Year 2008-2009 Taxes

| Distribution of Tax Dollars | Tax Rate | Taxes as Assessed | Cap Reduction | Net Taxes |
|---|---|---|---|---|
| COUNTY SCHOOL MAINTENANCE & OPERATION | 0.7500 | 973.88 | 56.61 | 917.27 |
| COUNTY SCHOOL DEBT (BONDS) | 0.5534 | 718.58 | 41.77 | 676.81 |
| NORTH LAS VEGAS CITY PUBLIC SAFETY | 0.5500 | 714.17 | 41.51 | 672.66 |
| CLARK COUNTY GENERAL OPERATING | 0.4470 | 580.43 | 33.74 | 546.69 |
| NORTH LAS VEGAS CITY | 0.3737 | 485.24 | 28.21 | 457.03 |
| NORTH LV CITY STREET MAINT/FIRE/PARK | 0.2163 | 280.86 | 16.33 | 264.53 |
| STATE OF NEVADA | 0.1700 | 220.74 | 12.83 | 207.91 |
| MEDICAL ASST TO INDIGENT PERSONS | 0.1000 | 129.85 | 7.55 | 122.30 |
| NORTH LAS VEGAS CITY LIBRARY | 0.0632 | 82.06 | 4.77 | 77.29 |
| CLARK COUNTY CAPITAL | 0.0500 | 64.92 | 3.77 | 61.15 |
| CLARK COUNTY FAMILY COURT | 0.0192 | 24.93 | 1.45 | 23.48 |
| NORTH LAS VEGAS CITY DEBT | 0.0187 | 24.28 | 1.41 | 22.87 |
| STATE INDIGENT TRUST | 0.0150 | 19.48 | 1.13 | 18.35 |
| CLARK COUNTY DEBT | 0.0129 | 16.75 | 0.97 | 15.78 |
| STATE COOPERATIVE EXTENSION | 0.0100 | 12.98 | 0.75 | 12.23 |
| NORTH LAS VEGAS EMERGENCY 911 | 0.0050 | 6.50 | 0.38 | 6.12 |
| LAS VEGAS ARTESIAN GROUNDWATER | 0.0008 | 1.04 | 0.06 | 0.98 |
| **TAX DISTRIBUTION** | **3.3552** | **4,356.69** | **253.24** | **4,103.45** |

**Detail of Amount Due**

| Year | Description | Total Tax Amt. | Balance Due |
|---|---|---|---|
| 2009 | Property Tax Principal | $4,103.45 | $2,051.72 |
| 2009 | Property Tax Penalty | $41.03 | $41.03 |
| **Total for Fiscal Tax Year 2009:** | | **$4,144.48** | **$2,092.75** |
| | **Total:** | **$4,144.48** | **$2,092.75** |